**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

UNITED STATES OF AMERICA                                                                                      PLAINTIFF

v.                                              No. 4:04CR00274-02 JLH

RAYMOND NEALY                                                                                                  DEFENDANT

**OPINION AND ORDER**

Raymond Nealy and Alvin Clay were charged in a second superseding indictment with wire fraud in connection with transactions involving the sale of five homes, in violation of 18 U.S.C. § 1343. Nealy and Clay were also charged with engaging in monetary transactions in criminally deprived property of a value greater than $10,000 by causing checks derived from those transactions to be cashed in violation of 18 U.S.C. §§ 1957 and 2. Nealy has now filed a motion to suppress evidence seized on or about January 16, 2004, when the FBI executed a search warrant on the offices of Ideal Mortgage, which was Nealy's company, Clay Real Estate and Clay Law Firm, all located at 323 Center Street, Suite 1050, Little Rock, Arkansas 72201. The warrant was obtained based upon an affidavit by FBI Special Agent Rodney Hays. Hays' affidavit was based largely on information provided by a person identified in the affidavit as "Source," later identified as Kenny Wright. Nealy argues that evidence seized as a result of that search should be suppressed because the affidavit did not establish Wright's veracity as an informant and provided no information independently corroborating his statements to the government, so the search warrant lacked probable cause; Hays provided misleading information in the warrant affidavit and omitted exculpatory information concerning Nealy, and he acted at least recklessly in doing so; and, because the

information in Hays' affidavit was stale, there was not a fair probability that evidence of a crime would be located in Ideal Mortgage, so the search warrant lacked probable cause.

Earlier in the case, Clay filed a motion to suppress in which he made similar but not identical arguments. The Court held an evidentiary hearing on Clay's motion on April 17, 2006. Nealy cited evidence from that evidentiary hearing in his motion to suppress. However, at the evidentiary hearing on his motion, he was invited to make the transcript of that evidentiary hearing a part of the record with respect to his motion, but did not do so. The Court, therefore, will not consider the testimony adduced at the hearing on Clay's motion.

During the hearing on Nealy's motion, Hays was the only witness called to testify. In addition to Hays' testimony, the Court received defense Exhibits A, B, C, D, E, F, G, G1, H, H1, and I. Exhibit G is an audio recording of a telephone conversation between Kenny Wright and Jeron Marshall on December 31, 2003; Exhibit H is an audio recording of a meeting between Kenny Wright, Ray Nealy, and an undercover agent on September 25, 2003; and Exhibit I is an audio recording of a telephone conversation between Nealy and Wright on September 4, 2003. The Court has listened to all three audio recordings and has read all of the paper exhibits, including the transcripts introduced as Exhibits G1 and H1. The government introduced Exhibits A through M, and the Court has reviewed all of those exhibits.

## I. *BRADY* AND *GIGLIO* MATERIAL

During the hearing, Nealy requested copies of all the FBI interview notes and FBI 302s of interviews with Kenny Wright before the search pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), and *Giglio v. United States*, 405 U.S. 150, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972). The Court ordered the United States to provide for *in camera* review the FBI

interview notes and 302s of interviews with Kenny Wright before the search of January 16, 2004. Those items were delivered to the Court after the hearing, and the Court has reviewed them. The Court found nothing in those documents that constitutes *Brady* or *Giglio* material, so Nealy's request that the Court order the United States to provide those items to him is denied. The Court has sealed those items in the envelope in which they came and directs the Clerk to place that sealed envelope in the record, still under seal, so that the items will be available for review on appeal if needed.

## II. THE SEARCH WARRANT

A search warrant is valid under the Fourth Amendment if it establishes probable cause. *United States v. Carpenter*, 422 F.3d 738, 744 (8th Cir. 2005). "Probable cause exists when the affidavit sets forth facts sufficient to create a fair probability that evidence of a crime will be found in the place to be searched." *United States v. Wells*, 223 F.3d 835, 838 (8th Cir. 2000). Whether probable cause exists is determined through a "practical, common-sense" evaluation of the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 2332, 76 L. Ed. 2d 527 (1983). "When the affidavit is based substantially on information provided by an informant, evidence of the informant's reliability, veracity, and basis of knowledge is highly relevant to the probable cause determination." *United States v. Ketzeback*, 358 F.3d 987, 991 (8th Cir. 2004).

### A. WHETHER THE AFFIDAVIT ESTABLISHED WRIGHT'S CREDIBILITY.

Nealy's first argument for suppression is that the affidavit contained no information establishing Wright's credibility and no information independently corroborating his statements to the government. However, Hays presented in the affidavit sufficient facts to confirm Wright's credibility to the magistrate judge.

First, Wright was not an anonymous tipster. The affidavit established that he met with the government in person on at least three different occasions and thereby gave the officers an opportunity to assess his credibility. *Carpenter*, 422 F.3d at 744.

Second, the basis of Wright's knowledge concerning the alleged activities of Clay and Nealy was adequately demonstrated in the warrant affidavit. Wright provided the names of Clay and his co-conspirators, the names of the businesses involved in the conspiracy, and both the layout and the address of the offices of Clay and Nealy. Wright had Clay's social security number. Wright also provided documentation of the alleged illegal activity, including lists of information that Nealy sent to Wright by facsimile for use in preparing false tax returns and other documents. The lists had the fax number of Ideal Mortgage, as the sender, at the bottom of the page. Hays corroborated the names of the businesses involved in the conspiracy and the address of their offices. In addition, the affidavit shows that Wright participated in a telephone conversation with Clay's secretary, Jeron Marshall. These facts establish that Wright had engaged in business with persons involved in the alleged conspiracy and had personal knowledge of some of the facts reiterated in the warrant affidavit.

Third, Wright implicated himself by admitting to the FBI that he had falsified tax documents and participated in the mortgage fraud scheme by preparing false construction invoices. These admissions against interest further strengthened his credibility. *United States v. Harris*, 403 U.S. 573, 583-84, 91 S. Ct. 2075, 2082, 29 L. Ed. 2d 723 (1971); *see also United States v. Pennington*, 287 F.3d 739, 742 (8th Cir. 2002) (fact that an informant implicated himself in criminal activity to the police supports a finding of probable cause to search).

Nealy argues that Wright's admissions provide no indication that he was telling the truth because he was granted immunity before he made the admissions. The warrant affidavit states,

"Source voluntarily came forward with the information under a grant of limited immunity given by AUSA [George] Vena." Nealy introduced no evidence to contradict this statement from the warrant affidavit.[1] He did introduce the letter from AUSA Vena to Wright's lawyer, Mark Leverett, stating that pursuant to Rule 11 of the Federal Rules of Criminal Procedure any statements by Wright in the course of the plea discussions would not be admissible against Wright in a subsequent proceeding if the discussions did not result in a plea of guilty or if they result in a plea of guilty that would later be withdrawn. Nealy cites *United States v. Gonzalez*, 559 F.2d 1271, 1273 (5th Cir. 1977), and *United States v. Keltner*, 147 F.3d 662, 672 (8th Cir. 1998), for the proposition that "grants of immunity lessen or destroy against-interest elements." In *Gonzalez*, the Fifth Circuit held that grand jury testimony given by a witness who refused to testify at trial should not have been admitted into evidence pursuant to Rule 804(b)(3) of the Federal Rules of Evidence, which provides that evidence is not excluded by the hearsay rule if the declarant is unavailable as a witness and the statement was contrary to the self interest of the person making it. The court said:

> We conclude that this section did not render [the witness's] out-of-court statements admissible. First, since he had been convicted and given immunity, [the witness's] statement could not subject him to criminal liability. In addition the pressures put on him by the prosecutor and the grand jury to testify would seem to make the giving of testimony to be in his best interest, rather than against it. As the Advisory Committee on the Federal Rules of Evidence noted, "a statement admitting guilt and implicating another person, made while in custody, may well be motivated by a desire to curry favor with the authorities and hence fail to qualify as against interest." A complete reading of the grand jury transcript discloses that the witness was closely weighing

---

[1] In his motion to suppress, Nealy argued that Wright did not come forward voluntarily, citing testimony by Wright's attorney, Mark Leverett, at the evidentiary hearing on Clay's motion. At that hearing, both Leverett and Vena testified. Leverett testified that Vena initiated the contact, while Vena testified that Leverett initiated the contact. For reasons stated in the opinion on Clay's motion, the Court found that Vena's memory was more likely to be accurate. *See* Document #127-2 at p. 4, n.1 and p. 14, n.6. Because Nealy chose not to introduce the transcript from that hearing, the Court need not consider any of that evidence in ruling on Nealy's motion.

5

> whether it would be better for him to testify under the circumstances, or not to testify. He obviously decided it was to his best interest to testify. Given the prosecutor's offer of immunity for offenses concerning this marijuana transaction, the only civil or criminal liability that he could face at the time would occur if he did not testify. Thus whether he told the truth or not was incidental to what would happen to him if he did not say something. If he answered the questions at the time, he would be free of the threat of contempt. The important thing to him was that he give an answer, be it truth or not. Under these circumstances, it cannot be said that "a reasonable made in his position would not have made the statement unless he believed it to be true."

*Gonzalez*, 559 F.2d at 1273. In *Keltner*, the testimony "was not admissible as a statement against penal interest because the government had granted immunity to [the witness] in exchange for his testimony." *Keltner*, 147 F.3d at 672.

Here, the issue is not whether Wright's hearsay evidence would be admissible at trial pursuant to Rule 804(b)(3), which was the issue in *Gonzalez* and *Keltner*. *Cf. Harris*, 403 U.S. at 584, 91 S. Ct. at 2082 (that an out-of-court declaration against interest may not be admissible at trial does not mean that it may not support a finding of probable cause). Furthermore, Wright was not in custody when he made the statements that implicated himself in criminal activity. Indeed, there is no evidence that he was even under investigation. The warrant affidavit says that Wright came forward voluntarily, and Hays so testified at the evidentiary hearing on Nealy's motion. Although Wright was granted limited use immunity before he provided the information that implicated himself in criminal activity, the fact that he came forward voluntarily, without being in custody or even under investigation, to give information that implicated himself nevertheless is an indication that he was credible. That he was given limited use immunity, rather than immunity against prosecution, is further indication that it was not in his self-interest to implicate himself in the criminal activity that he described in his interviews with the government. As the Supreme Court said:

> Common sense in the important daily affairs of life would induce a prudent and disinterested observer to credit these statements. People do not lightly admit a crime and place critical evidence in the hands of the police in the form of their own admissions. Admissions of crime, like admissions against proprietary interests, carry their own indicia of credibility–sufficient at least to support a finding of probable cause to search. That the informant may be paid or promised a 'break' does not eliminate the residual risk and opprobrium of having admitted criminal conduct. Concededly admissions of crime do not always lend credibility to contemporaneous or later accusations of another. But here the informant's admission that over a long period and currently he had been buying illicit liquor on certain premises, itself and without more, implicated that property and furnished probable cause to search.

*Harris*, 403 U.S. at 583-84, 91 S. Ct. at 2082.

The warrant affidavit sufficiently established Wright's credibility. Nealy's first argument for suppression is rejected.

### B.   WHETHER HAYS MISLED THE MAGISTRATE JUDGE.

Nealy's second argument is that Hays misled the magistrate judge and did so at least recklessly. The Supreme Court has held:

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

*Franks v. Delaware*, 438 U.S. 154, 156-57, 98 S. Ct. 2674, 2676, 57 L. Ed. 2d 667 (1978). "Police cannot obtain valid search warrants where they knowingly or recklessly provide misinformation to a magistrate who issues a warrant, unless probable cause exists when the affidavit is properly reconstructed with truthful information." *United States v. Salter*, 358 F.3d 1080, 1085 (8th Cir.

2004). Because search warrants are presumed to be valid, the defendant bears the burden of proving the intentional or reckless inclusion of misrepresentations in a warrant affidavit. *United States v. Ozar*, 50 F.3d 1440, 1443 (8th Cir. 1995). The defendant must prove that a false statement was intentionally or recklessly included by the affiant in the warrant affidavit, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause. *United States v. Rivera*, 410 F.3d 998, 1000-01 (8th Cir. 2005).

During the hearing, Nealy introduced evidence in an attempt to show that paragraph 31 of the warrant affidavit was false inasmuch as that paragraph says that, when Wright spoke to Jeron Marshall by telephone on December 31, 2003, he was returning a call from Marshall that she had made two weeks earlier when she had asked Wright if he still had copies of the 1099s that were prepared for Clay. According to Nealy's argument, that information was false because, when Wright made the call, he asked for Clay and expressed surprise that Marshall was in the office, so he could not have been returning Marshall's call; and, according to Nealy's argument, the discussion was whether Clay needed 1099s to be prepared, not whether Wright still had copies of 1099s that had been prepared. The recording and the transcript show that Wright told Marshall, "I was calling to check out to see what the status was, if Alvin still needed the 1099s or what he need [sic]." Marshall responded, "He hasn't mentioned it anymore. That day I talked to him, all he said was, 'okay.' And he hasn't mentioned it anymore." This exchange confirms the statement in paragraph 31 in the warrant affidavit that Wright and Marshall had spoken previously about Clay's need for 1099s. When Wright asked whether Clay still needed the 1099s, he did not have to explain to Marshall what he was talking about. She knew what he was talking about, and she responded that Clay had not mentioned that subject again after "that day I talked to him." Thus, paragraph 31 of the warrant

affidavit appears to be substantially accurate. Wright had talked to Marshall about Clay's need for 1099s, and in his telephone call on December 31, 2003, he followed up on the earlier conversation in a way that was clear that Marshall knew what he was talking about. Although Nealy argues that Wright called to see whether Clay needed 1099s to be prepared, rather than to see whether he still needed copies, nothing in the recording of the telephone conversation specifies whether Wright was inquiring as to whether Clay needed 1099s to be prepared or whether he needed copies of 1099s previously prepared. Nealy has failed to show by a preponderance of the evidence that paragraph 31 of the warrant affidavit is misleading. Furthermore, even if that paragraph were omitted, the remainder of the warrant affidavit sufficiently established probable cause to justify the issuance of the search warrant.

Nealy's primary argument based on *Franks* is that Hays failed to state in the warrant affidavit that the government had sent an undercover agent with Wright to Nealy's office on September 25, 2003, and during that conversation Nealy repeatedly told the undercover agent that he could not help him obtain a loan unless he could verify his income. Nealy cites no authority for the proposition that such information must be included in an affidavit for a search warrant. In a letter to the Court,[2] Nealy argues that he was unaware that he was being recorded, but there was no proof offered as to whether Nealy had learned before the meeting that Wright had met with the government and would be coming with an undercover agent. Although it is true that Hays deliberately left this information out of the warrant affidavit, the Court does not believe that Hays did so with the intent to mislead the magistrate judge or with reckless disregard as to whether the magistrate judge would be misled,

---

[2] Nealy's lawyer made her closing argument in a letter after the hearing rather than during the hearing so that the Court could attend a funeral.

nor would have the inclusion of that information have required a finding that no probable cause existed for the issuance of the search warrant. Likewise, Nealy argues that Wright had a bias against Nealy, which was not disclosed in the warrant affidavit, but he fails to show that Hays intended to mislead the magistrate judge or acted in reckless disregard of the truth, and he fails to show that inclusion of that information would have rendered the affidavit insufficient to establish probable cause. Wright implicated Clay and Donny McCuien, as well as Nealy, so any hostility he had against Nealy would not indicate that the information that he provided was so tainted by personal bias that there was not a fair probability that evidence of a crime would be found. The information in the warrant affidavit established there was probable cause to believe that a crime had been committed and that evidence of the crime would be found at 323 Center Street, Suite 1050, Little Rock, Arkansas. The fact that Nealy had, on one occasion in September 2003 in a recorded conversation with an undercover agent, said that he would not help the agent unless the agent could prove his income, and the fact that Wright was biased against Nealy, did not nullify the probable cause otherwise established. Nealy's second argument for suppression fails.

### C. WHETHER THE INFORMATION WAS TOO STALE.

Nealy's third argument is that the information in the affidavit was stale because the affidavit stated that Wright was no longer associated with Nealy after September 2002 and because Nealy was essentially no longer in the mortgage business but was pursuing a career in professional football, so there was not a fair probability that there would be evidence of crime in his office.

"There is no bright-line test for determining when information is stale . . . and the vitality of probable cause cannot be quantified by simply counting the number of days between the occurrence of the facts supplied and the issuance of the affidavit." *United States v. McNeil*, 184 F.3d 770, 775

(8th Cir. 1999) (quoting *United States v. Koelling*, 992 F.2d 817, 822 (8th Cir. 1993)).  Whether information is stale must be decided in the context of a specific case and with regard to the nature of the crime under investigation.  *Id*.

Here, the warrant sought to search the business premises of a law office, a real estate office, and a mortgage company for the purpose of finding loan documents, tax returns, W2s, and 1099s, as well as other business records, that would be evidence of loan and credit application fraud and wire fraud.  Information pertaining to loans and mortgages generally is maintained for years, so the fact that the affidavit indicated that it had been some sixteen months since Wright was involved with Nealy did not show that the information was too stale to support probable cause.  Furthermore, the affidavit established that Wright had communication with Clay's secretary about 1099s less than a month before the search warrant was issued.  The information in the warrant affidavit was not too stale to support a finding that there was a fair probability that there would be evidence of crime in the office.  Nealy's third argument for suppression is rejected.

## CONCLUSION

For all the foregoing reasons, Nealy's motion to suppress is denied.  Document #329.

IT IS SO ORDERED this 25th day of February, 2009.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE