**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

UNITED STATES OF AMERICA                                             PLAINTIFF

v.                         NO. 4:04CR00274-02 JLH

RAYMOND NEALY                                                    DEFENDANT

**ORDER**

Raymond Nealy has filed a motion asking the undersigned judge to recuse so that his case would be reassigned to another judge for sentencing.

In December 2004, Nealy was indicted, with Alvin Clay and Donny McCuien, on charges of conspiring to commit wire fraud in connection with five real estate transactions. After several continuances and two superseding indictments, the case was scheduled for trial on May 27, 2008. By that time, McCuien had entered a guilty plea, leaving Nealy and Clay to be tried. On May 11, 2008, Nealy's lawyer filed a motion to withdraw and also requested a continuance on Nealy's behalf so that substitute counsel could be obtained and could prepare to defend Nealy. The Court directed that he state the reasons for his motion to withdraw under seal, which he did. The Court then granted the motion to withdraw, severed Nealy's case from Clay's case, and granted a continuance to Nealy so that he could obtain counsel and have the time necessary for effective preparation for trial.

The case proceeded to trial against Clay on May 27, 2008. Clay was convicted of one count of conspiracy to commit wire fraud and four counts of engaging in a monetary transaction from funds derived from the wire fraud.

Nealy's trial was scheduled to begin on March 16, 2009. Shortly before trial, Nealy and the government reached a plea agreement pursuant to which Nealy would waive indictment and plead guilty to one count of misprison of a felony, and the government would dismiss the second

superseding indictment. A superseding information was filed charging Nealy with having knowledge of the commission of a felony that Clay knowingly, and for the purpose of evading the reporting requirements of 31 U.S.C. § 5313(a), structured and attempted to structure financial transactions with a domestic financial institution in violation of 31 U.S.C. § 5324(a)(3) by purchasing three cashier's checks at Simmons First National Bank in the amounts of $9,000, $4,339.51, and $9,000, and that Nealy concealed and did not make that crime known to authorities, all in violation of 18 U.S.C. § 4.[1]

At the beginning of the hearing for waiver of indictment and entry of plea to the superseding information, the Court requested that one of the prosecuting attorneys explain the reason for entering into this plea agreement. In pertinent part, the Court stated, addressing, Steven N. Snyder, one of the prosecuting attorneys:

> [U]nder 11(c)(5), the Court – or (4) and (5) – the Court has an obligation to consider and can either reject or accept the plea agreement because of the terms.
>
> What I want from you – I mean, I've heard your case in chief in the trial against Mr. Clay. I have not heard Mr. Nealy's defense, of course. But I'd like for you to explain to me why I should accept the plea agreement in this instance, from the government's standpoint, moving from the charges, the conspiracy charges down to misprison of a felony. And I have every confidence that you and Mr. Webb and Ms. Stanley have a good reason for it, but I have no idea what it is. So I would like for you to tell me what it is that you can tell me. There may be things that you can't tell me. But I need to hear something that makes me see that this is a plea agreement that's in the public interest and something that I should accept.

Document #364 at 3. Snyder responded:

> Since the Clay trial, we have been, I would say, re-evaluating our case and weighing strengths and weaknesses. We have spoken to Mr. Nealy, and because of the – I

---

[1] These funds were proceeds of one of the transactions included in the conspiracy count. Clay testified at his trial that the three cashier's checks were payments to Nealy for construction work. Nealy stated during his plea colloquy that Clay owed him this money as a result of a loan.

> wouldn't say the facts of our case have changed, but because of things that have come up, we felt like it was in the best interest of both parties to enter into this agreement. We are confident in our case. It's kind of hard for me to put it into words. I probably am not doing a very good job of articulating it. And we've, again, weighed the strengths and the weaknesses, and based on those and in talking to Mr. Nealy and his attorneys, we just feel that it would be in the best interest of the government to proceed with this information.
>
> If you have some additional –

Document #364 at 3-4. The Court then intervened and said:

> No. I mean, I think you know what my question is. You put on a case in the Clay trial, and without hearing Mr. Nealy's defense, I mean, the case in chief was very compelling, and the jury convicted Mr. Clay of conspiring with Mr. Nealy. And really and truly, the evidence was stronger against Mr. Nealy than against Mr. Clay. I think everybody knew that. That was part of the defense, that the case you put on was primarily aimed at Mr. Nealy, not Mr. Clay. So now that we have Mr. Clay convicted, we're in here pleading Mr. Nealy to a substantially lesser offense. And it's not that I'm going to reject it, and I never have rejected. I've been here four and a half years. I have not rejected a plea agreement. I let the lawyers try their cases and do their things, and you all are good lawyers, and Ms. Koehler and Mr. Perroni are good lawyers, and I'm confident there's a good reason for it. But I am bothered some by it. Part of it is the fairness of the whole thing, because we have different parties being treated substantially different, at least on what's been presented to me, not based on anything related to culpability. So if there's anything else you can tell me, tell me, and if not, then –

Document #364 at 4. From there, the discussion continued, and Snyder informed the Court that the victims of the conspiracy had been informed about the proposed plea agreement and were in support of it.

Thereafter, the Court called Nealy and his attorney to the podium and then went through the colloquy pertaining to waiver of indictment and entry of a plea. During the course of that colloquy the Court explained the sentencing guidelines were advisory and then made the following statement to Nealy:

> The other element of uncertainty about sentencing is after the guideline range has been determined, the judge has the authority to impose a sentence that's more severe

>or less severe than the sentence called for by the guidelines. In this instance, the Court has the authority and would consider a sentence that's more severe than what's called for by the guidelines. In other words, even if the guideline range turns out to be zero to six months, and even if it turns out that you're eligible for probation under the guidelines, in this case, the Court will consider the possibility – I've made no decisions, but I will consider the possibility of a term of imprisonment for you, regardless of any recommendations of the United States Attorney. And I will consider – I haven't made any decisions, but I will consider a sentence that would be greater than zero to six months. I'll consider it. I'm not saying what I will do. But you need to understand that that's a possibility. And if you want to stop and visit with Ms. Koehler before you go forward, after having been told that, then you may do so. But do you understand that?

Document #364 at 17-18.

The motion for recusal is based in large part on these comments made during the hearing on the waiver of indictment and entry of a plea to the information. In addition, Nealy argues that the Court should recuse because the government filed a motion for upward departure, contrary to the plea agreement, and then withdrew it after being contacted by defense counsel. Nealy notes that the Court knew of the government's sentencing memorandum because the Court entered an order granting the government's motion to withdraw it. Furthermore, Nealy said that the Court should recuse because in ruling on Clay's motion for new trial or for judgment of acquittal, the Court described the evidence as showing that Nealy and McCuien conspired to commit wire fraud. Document #374 at 4.

Section 455(a) of Title 28 of the United States Code requires a federal judge to "disqualify himself in any proceeding in which his impartiality might reasonably be questioned." The test is an objective one – whether the judge's impartiality might reasonably be questioned. The Eighth Circuit has said that the issue is whether the judge's impartiality "might reasonably be questioned by the average person on the street who knows all of the relevant facts of a case." *Scenic Holding, LLC v. New Bd. of Trustees of the Tabernacle Missionary Baptist Church, Inc.*, 506 F.3d 656, 662 (8th Cir.

2007) (quoting *Moran v. Clarke*, 296 F.3d 638, 643 (8th Cir. 2002)). If this objective standard is met, a judge must disqualify himself even if he has no actual bias.

In *Liteky v. United States*, 510 U.S. 540, 114 S. Ct. 1147, 127 L. Ed. 2d 474 (1994), the Supreme Court analyzed § 455(a) and explained at some length the requirements of that provision in a case that presented issues similar, though not identical, to the issue presented here.

> First, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. In and of themselves, *i.e.*, apart from surrounding comments or accompanying opinion, they cannot possibly show reliance upon an extra judicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required (as discussed below) when no extra judicial source is involved. Almost invariably, they are proper grounds for appeal, not for reversal. Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extra judicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible. . . . *Not* establishing bias or partiality, however, are expression of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display. A judge's ordinary efforts at courtroom administration – even a stern and short-tempered judge's ordinary efforts at courtroom administration – remain immune.

*Id.* at 555-56, 114 S. Ct. at 1157. *See also Scenic Holding*, 506 F.3d at 662-63. In *Liteky*, the grounds for recusal were based on rulings made, and statements uttered, by the district judge during and after an earlier trial involving the defendant, as well as the judge's admonishment of the defendant's counsel and co-defendants. *Liteky*, 510 U.S. at 556, 114 S. Ct. at 1157-58. The Supreme Court held:

> All of these grounds are inadequate under the principles we have described above: They consist of judicial rulings, routine administration efforts, and ordinary admonishments (whether or not legally supportable) to counsel and to witnesses. All

occurred in the course of judicial proceedings, *and* neither (1) relied upon knowledge acquired outside such proceedings nor (2) displayed deep-seated and unequivocal antagonism that would render fair judgment impossible.

*Id.* at 556, 114 S. Ct. at 1158. *See also United States v. Gamboa*, 439 F.3d 796, 817 (8th Cir. 2006); *United States v. Sypolt*, 346 F.3d 838, 839 (8th Cir. 2003). An unfavorable ruling – even refusal to accept a guilty plea – does not warrant disqualification. *Harris v. Missouri*, 960 F.2d 738, 740 (8th Cir. 1992). Here, Nealy does not complain of any ruling by the Court – the Court accepted his plea. He argues, instead, that while accepting his plea, the Court made comments based on the evidence presented at the Clay trial from which the appearance of impropriety arises.

After a thorough review of the transcript of the hearing on Nealy's waiver of indictment and entry of a plea to the superseding information, with particular focus on the comments that are mentioned in Nealy's motion for recusal, and after reviewing the order ruling on Clay's motion for new trial or for judgment of acquittal, the undersigned judge does not believe that recusal is in order. The comments asserted as a basis for disqualification were made in the course of judicial proceedings and neither relied upon knowledge acquired outside of the proceedings nor displayed deep-seated and unequivocal antagonism that would make fair judgment impossible. Therefore, the motion for recusal is DENIED. Document #390.

IT IS SO ORDERED this 26th day of August, 2009.

J. LEON HOLMES
UNITED STATES DISTRICT JUDGE